**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

DAWN BODENNER, MELANIE BOYCE,
ELIZABETH and ANDREW DOMINGUEZ
INDIVIDUALLY and as NBF OF ABEL
DOMINGUEZ, a minor, and ELIZABETH
GILMAN,

        Plaintiffs,

v.                                                                            Civ. No. 12-0601 MV/WDS

CHASE MARTIN, KRIS SWEENEY, and
STATE FARM INSURANCE COMPANY,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Plaintiffs' Motion to Remand, Request for Attorney Fees, and Authorities ("Motion to Remand") [Doc. 10], Defendant State Farm Mutual Automobile Insurance Company's ("State Farm") Motion to Dismiss for Failure to State a Claim Regarding Payment of Medical Expenses and Consolidated Memorandum Brief in Support of Motion to Dismiss for Failure to State a Claim ("Motion to Dismiss Claims Subject to Arbitration") [Doc. 5], and Defendants State Farm and Kris Sweeney's Motion to Dismiss all Claims Against Kris Sweeney ("Motion to Dismiss Sweeney Claims") [Doc. 3]. The Court, having considered the motions, briefs, and relevant law, and being otherwise fully informed, finds that the Motion to Remand is not well-taken and will be denied and that the Motion to Dismiss Claims Subject to Arbitration is well-taken and will be granted. The Court further finds that the Motion to Dismiss Sweeney Claims shall be converted to a motion for summary judgment and that the parties shall have the opportunity to present supplemental briefing and evidence as set forth herein.

1

## BACKGROUND

On April 24, 2012, Plaintiffs filed their Complaint for Bad Faith, Breach of Contract, Breach of Fiduciary Duty, Unfair Insurance Practices, Unfair Practices Act, and Invasion of Privacy ("Complaint") in the First Judicial District, County of Santa Fe, State of New Mexico. Defendants State Farm and Sweeney timely filed their Notice of Removal based upon diversity of citizenship jurisdiction on June 1, 2012.

The parties dispute whether Defendant Martin properly was served when the Notice of Removal was filed.   Plaintiffs' process server filed an affidavit of service indicating that he served Defendant Martin on May 11, 2012, by delivering process to "Carolyn Beech, assistant to Kathy Rees, who is this defendant's registered agent and is authorized to accept service for State Farm Insurance Company," at State Farm's office in Greeley, Colorado.   *See* Notice of Removal, Exh. A, Aff. of Service.   The affidavit of service itself does not provide that Ms. Rees was authorized to accept service for Defendant Martin but rather indicates that Kathy Rees was "authorized to accept service for State Farm."   *Id.*

In the Complaint, Plaintiffs individually allege that they are entitled to coverage under four separate automobile insurance policies purchased from Defendant State Farm and that this coverage included medical payments benefits.   The subject matter of this dispute arises out of Defendant State Farm's handling and processing of Plaintiffs' claims for medical payments benefits for injuries Plaintiffs sustained in four separate automobile accidents.

The Complaint contains five counts.   Count I alleges bad faith claims handling and bad faith refusal to pay medical payments coverage benefits.   Count II alleges that Defendant State Farm breached its fiduciary duties under the covenant of good faith and fair dealing.   Plaintiffs seek compensatory and punitive damages as well as attorney's fees for Counts I and II.   Count III

2

alleges that State Farm engaged in unfair and deceptive business practices under the Trade Practices and Frauds Act (TPFA), *see* N.M. Stat. Ann. § 59A-16-20, for which Plaintiffs seek treble damages and attorney's fees.   Count IV alleges invasion of privacy rights, for which Plaintiffs seek breach of contract damages.   Count V alleges breach of contract, for which Plaintiffs seek contract damages with limits for medical payments coverage benefits under the respective policies of $100,000 for Plaintiffs Bodenner, Boyce, and Gilman, and $5,000 per person for Plaintiffs Elizabeth, Andrew, and Abel Dominguez.   Defendants attach to their Notice of Removal the affidavit of attorney Don Bruckner, in which Mr. Bruckner opines that based upon his experience litigating claims such as Plaintiffs' before a jury the "combined award could be in excess of $75,000." *See* Notice of Removal, Exh. C, Aff. of D. Bruckner, ¶ 8.

The Complaint alleges that Plaintiffs Dawn Bodenner, Elizabeth Gilman, Elizabeth Dominguez, Andrew Dominguez, and Abel Dominguez are residents of the State of New Mexico, and that Plaintiff Melanie Boyce is a resident of the State of California. *See id.*, Exh. A, Compl., ¶¶ 1-6.   The Complaint further alleges that Defendant State Farm is a foreign insurance company with its principal place of business in Bloomington, Illinois, and that Defendant Kris Sweeney is a resident of the State of New Mexico. *See id.* ¶¶ 7, 9.   Defendant Chase Martin is a resident of Colorado. *See id.*, Exh. B, Aff. of C. Martin, ¶ 1.

The only specific allegations in the Complaint that directly reference Defendant Sweeney are Paragraphs 9 and 143.   Paragraph 9 alleges, "Defendant Kris Sweeney, on information and belief, is a New Mexico resident, the New Mexico manager of State Farm and is responsible for State Farm implementing and following appropriate claims handling procedures in New Mexico." *Id.*, Exh. A, Compl., ¶ 9.   Paragraph 143 alleges, "On information and belief, State Farm continues to employ[] Sweeney and has thus ratified [her] misconduct." *Id.* ¶ 143.

In support of their Motion to Dismiss Sweeney Claims and Opposition to the Motion to Remand, Defendants refer to the affidavits of Defendants Sweeney and Martin.   In her affidavit, Defendant Sweeney attests that she is the "Auto Claims Section Manager for State Farm, and that in this capacity she oversee[s] handling of complex liability, uninsured motorist, and underinsured motorist claims in New Mexico."   *See id.*, Exh. D, Aff. of K. Sweeney, ¶¶ 1, 2.   Defendant Sweeney further attests that she does "not directly supervise or participate in the claims handling of medical payments coverage claims" and that she is "not responsible for the implementation of claims handling procedures for medical payments coverage claims."   *Id.* ¶ 2.   Defendant Sweeney also indicates that she "did not supervise or participate in the claims handling or claims decision making process for any of the Plaintiffs' claims for medical payments coverage benefits," that "Plaintiffs' claims for medical payments coverage were investigated and handled by State Farm's medical payments coverage team," and that "[a]ll claims handlers for medical payments coverage work out of the State Farm claim's [sic] office located in Greenlee [sic], Colorado."   *Id.* ¶ 4.   In his affidavit, Defendant Martin, a State Farm employee who works in the Greeley, Colorado office, attests, "All claims for medical payment coverage involving New Mexico insureds are handled out of the Greenlee [sic], Colorado claims office.   This would include the medical payments coverage claims for each of the named Plaintiffs in this lawsuit."   *See id.*, Exh. B, Aff. of C. Martin, ¶ 3.

All of the insurance policies provide, "If there is a disagreement as to whether incurred charges are *medical expenses*, then the disagreement will be resolved by arbitration upon written request of the *insured* or *us*."   Mot. to Dismiss Claims Subject to Arbitration, Exh. A, Policy Form 9831A, Medical Payments Coverage, Arbitration.   The policies further provide, "The arbitrators shall only decide whether incurred charges are *medical expenses*."   *Id.*   Medical expenses are

4

defined as "*reasonable expenses* for *medical services.*"   *Id.*, Additional Definitions.   "Medical

Services" are further defined as "treatment, procedures, products, and other services that are . . .

necessary to achieve maximum medical improvement for the *bodily injury*; . . . rendered by a

healthcare provider; . . . "commonly and customarily recognized through the medical profession

and within the United States as appropriate for the treatment of the *bodily injury*; . . . not

experimental; and . . . not for research purposes."   *Id.*   "Reasonable Expenses" means the lowest

one of the following charges:

1. The usual and customary fees charged by a majority of healthcare providers who provide similar *medical services* in the geographical area in which the charges were incurred;
2. The fees agreed to by both the *insured's* healthcare provider and *us*; or
3. The fees agreed upon between the *insured's* healthcare provider and a third party when *we* have a contract with such third party.

*Id.*   The insuring agreement provides that Defendant State Farm will pay "*medical expenses*

incurred because of *bodily injury* that is sustained by an *insured* and caused by a motor vehicle

accident."   *Id.*, Insuring Agreement.

The plain language of the policies provides that if requested by one of the parties, all

disputes concerning "whether incurred charges are medical expenses" under Plaintiffs' respective

policies must be decided by binding arbitration.   *See id.*   State Farm requested that Plaintiffs

arbitrate their claims and provided Plaintiffs with a copy of the policy language regarding

arbitration.   *See id.*, Exh. B, Correspondence dated June 5, 2012.

## STANDARD

I.   Removal and Remand

A.   Removal

A defendant may remove a state civil action "to the district court of the United States for

5

the district and division embracing the place where such action is pending" if the federal district

court has original diversity of citizenship or federal question jurisdiction over the matter.   *See* 28

U.S.C. § 1441(a).   A notice of removal must be filed within "thirty days after receipt by the

defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other

paper from which it may first be ascertained that the case is one which is or has become

removable."   *Id.* § 1446(b).   The right to remove is purely statutory and thus is strictly construed.

*See Farmland Nat'l Beef Packing Co. v. Stone Container Corp.*, No. 04-3028, 2004 WL 830769,

at *3 (10th Cir. Apr. 16, 2004) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09

(1941)); *Chavez v. Kincaid*, 15 F. Supp. 2d 1118, 1119 (D.N.M. 1998) (citations omitted).   As the

removing party, the defendant bears the burden of proving "all jurisdictional facts and of

establishing a right to removal."   *Id.* (citations omitted).   Removal statutes are strictly construed,

and ambiguities should be resolved in favor of remand.   *See id.* (citations omitted); *Shamrock*, 313

U.S. at 108-09; *see also Fajen v. Foundation Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982)

("all doubts are to be resolved against removal").

> B.      Remand

If a defendant has removed a matter to federal court, the plaintiff may object to the removal

by filing a motion to remand the case back to state court.   *See Caterpillar Inc. v. Lewis*, 519 U.S.

61, 69 (1996).   A plaintiff's objection to removal may be based upon procedural or jurisdictional

grounds.   *See Huffman v. Saul Holdings LLC*, 194 F.3d 1072, 1076 (10th Cir. 1999) ("there are

two types of improperly removed cases:   those in which the federal court has no subject matter

jurisdiction and those with defects in the removal procedure itself") (citation omitted).

> 1.      Remand Based Upon Procedural Defect

A defect in the removal procedure is one of the grounds for remand in 28 United States

6

Code Section 1447(c).   *See Moreno v. Taos County Bd. of Comm'rs*, 778 F. Supp. 2d 1139, 1141 (D.N.M. 2001); *McShares, Inc. v. Barry*, 979 F. Supp. 1338, 1341 (D. Kan. 1997) (citation omitted).   Specifically, Section 1447(c) provides that "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."   28 U.S.C. § 1447(c).

Although the procedure for removal set out in Section 1446(b) is couched in terms of a single defendant, *see* 28 U.S.C. § 1446(b) ("[t]he notice of removal . . . shall be filed within 30 days after the receipt by the defendant . . . of a copy of the initial pleading setting forth the claim for relief upon which such action . . . is based"), courts have held that all defendants must join a removal petition within the 30-day time period or removal will be procedurally defective.   *See Farmland Nat'l Beef Packing*, 2004 WL 830769, at *3; *Moreno*, 778 F. Supp. 2d at 1141 (citations omitted); *see also Cornwall v. Robinson*, 654 F.2d 685, 686 (10th Cir. 1981).   The lack of unanimous consent is a procedural, and not a jurisdictional, defect.   *See Farmland Nat'l Beef Packing*, 2004 WL 830769, at *3; *Sheet Metal Workers Int'l Ass'n v. Seay*, 693 F.2d 1000, 1005 n.8 (10th Cir. 1982) (citing *Cornwall*, 654 F.2d at 686); *Moreno*, 778 F. Supp. 2d at 1141.   This requirement for consent by the co-defendants is known as the "rule of unanimity" and is based not on statute, but rather on case law.   *See* 14C Charles A. Wright, Arthur R. Miller et al., *Federal Practice & Procedure* § 3730 (4th ed.); *Moreno*, 778 F. Supp. 2d at 1141.

There are exceptions to the rule of unanimity.   For example, courts including the Tenth Circuit have held that defendants unserved at the time of removal need not join the notice of removal.   *See Sheldon v. Khanal*, No. 10-3237, 2012 WL 4801297, at *3 (10th Cir. Oct. 10, 2012) (holding that "clear statutory language requir[es] only served defendants to consent to removal"); 28 U.S.C. § 1446(b)(2)(A) ("all defendants who have been properly joined *and served* must join in

7

or consent to the removal of the action") (emphasis added).   Absent an applicable exception, remand is required if all of the defendants fail to consent to the petition for removal within the 30-day period.  *See Moreno*, 778 F. Supp. 2d at 1141; *McShares*, 979 F. Supp. at 1342.   The statute provides no guidance in the case of multiple defendants as to whether the 30-day period begins to run when the first defendant is served or the last is served.   There is a split of authority among the United States Courts of Appeal regarding this question, and the Tenth Circuit has not yet weighed in on the issue.[1]

> 2.   Remand Based Upon Lack of Subject Matter Jurisdiction and Defense of
>       Fraudulent Joinder

Lack of subject matter jurisdiction is a second ground for remand specified in Section 1447(c).   Specifically, Section 1447(c) provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  *Id.*

A defendant may remove a case to federal court based upon diversity of citizenship jurisdiction in the absence of complete diversity if a plaintiff joins residents of the forum state without good faith to defeat federal jurisdiction.  *See Am. Nat'l Bank & Trust Co. v. Bic Corp.*, 931 F.2d 1411, 1412 (10th Cir. 1991) (citations omitted).   It is well settled that upon allegations of fraudulent joinder designed to prevent removal, federal courts may look beyond the pleadings to determine if the joinder, although fair on its face, is a sham to prevent removal.  *See Smoot v.*

---

[1]  *Compare Getty Oil v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1262-63 (5th Cir. 1988) (adopting the first-served defendant rule, by which the 30-day removal period begins to run when the first defendant is served); *with Bailey v. Jansenn Pharmaceutica, Inc.*, 536 F.3d 1202, 1209 (11th Cir. 2008) (adopting the last-served defendant rule, by which the 30-day period begins running for each defendant at the time of service of process of that defendant); *Marano Enters. v. Z-Teca Restaurants, L.P.*, 254 F.3d 753, 756 (8th Cir. 2001) (same); *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533 (6th Cir. 1999) (same), *cert. denied*, 528 U.S. 1076 (2000); *cf. Barbour v. Int'l Union*, 640 F.3d 599, 612 (4th Cir. 2001) (adopting the intermediate rule, by which the 30-day period begins to run when the first defendant is served, but any later-served defendant has thirty days to consent from the date on which *the later defendant* was served).

*Chicago, Rock Island, and Pac. R.R. Co.*, 378 F.2d 879, 881-82 (10th Cir. 1967) (citations omitted).   "'In many cases, removability can be determined by the original pleadings and normally the statement of a cause of action against the resident defendant will suffice to prevent removal.   But upon specific allegations of fraudulent joinder the court may pierce the pleadings, . . . consider the entire record, and determine the basis of joinder by any means available.'"   *See id.* at 882 (quoting *Dodd v. Fawcett Publications, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964) (internal citations omitted)); *see also Nerad v. AstraZeneca Pharmaceuticals, Inc.*, No. 05-6128, 2006 WL 2879057, at *2 (10th Cir. Oct. 11, 2006) (quoting *Dodd*, 329 F.2d at 85).

   "The case law places a heavy burden on the party asserting fraudulent joinder."   *Montano v. Allstate Indem.*, No. 99-2225, 2000 WL 525592, at *1 (10th Cir. Apr. 14, 2000); *see also McLeod v. Cities Serv. Gas Co.*, 233 F.2d 242, 246 (10th Cir. 1956) ("fraudulent joinder must be pleaded with particularity and proven with certainty") (citation omitted); *Couch v. Astec Indus., Inc.*, 71 F. Supp. 2d 1145, 1147 (D.N.M. 1999) (same).   "'To prove [an] allegation of fraudulent joinder the removing parties must demonstrate that there is no possibility that the plaintiff would be able to establish a cause of action against the joined party in state court."   *Montano*, 2000 WL 525592, at *1 (quoting *Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir. 2000)); *see also Smoot*, 378 F.2d at 882 ("[t]he joinder of a resident defendant against whom no cause of action is stated is a patent sham, . . . and though a cause of action be stated, the joinder is similarly fraudulent if in fact no cause of action exists") (citing *Lobato v. Pay Less Drug Stores, Inc.*, 261 F.2d 406 (10th Cir. 1958)) (internal citation omitted).   The court, then, must "decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant."   *Nerad*, 2006 WL 2879057, at *2 (citation omitted); *see also Montano*, 2000 WL 525592, at *1 (citations omitted).   A "reasonable basis" means that the claim "need not be a

9

sure-thing, but it must have a basis in the alleged facts and the applicable law." *See Nerad*, 2006

WL 2879057, at *2. "This does not mean that the federal court will pre-try, as a matter of course,

doubtful issues of fact to determine removability; the issue must be capable of summary

determination and be proven with complete certainty." *See Smoot*, 378 F.2d at 882 (citing

*McLeod*, 233 F.2d 242).

"[R]emand is required, [however,] if any one of the claims against the non-diverse

defendant . . . is possibly viable." *Montano*, 2000 WL 525592, at *2 (citation omitted).   Remand

based upon a defendant's failure to establish fraudulent joinder challenge is a jurisdictional

inquiry. *See Nerad*, 2006 WL 2879057, at *2 (citation omitted); *Albert v. Smith's Food & Drug*

*Ctrs., Inc.*, 356 F.3d 1242, 1247 (10th Cir. 2004).   "'In evaluating fraudulent joinder claims, [a

court] must initially resolve all disputed questions of fact and all ambiguities in the controlling law

in favor of the non-removing party.'" *Montano*, 2000 WL 525592, at *1 (quoting *Hart*, 199 F.3d

at 246) (additional citations omitted).

III.   Motions to Dismiss

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon

which relief can be granted." Fed. R. Civ. P. 12(b)(6).   "The nature of a Rule 12(b)(6) motion

tests the sufficiency of the allegations within the four corners of the complaint." *Mobley v.*

*McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).   When considering a 12(b)(6) motion, the Court

must accept as true all well-pled factual allegations in the complaint, view those allegations in the

light most favorable to the non-moving party, and draw all reasonable inferences in the

non-moving party's favor. *See Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009), *cert.*

*denied*, 130 S. Ct. 1142 (2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although this standard does not require "detailed factual allegations," it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Accordingly, a complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Nor does a complaint suffice if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, while a court must take all of the factual allegations in the complaint as true, "a plaintiff armed with nothing more than conclusions" cannot survive a motion to dismiss. *Id.* at 1950.

When ruling on a Rule 12(b)(6) motion to dismiss, the district court must examine only the plaintiff's complaint and not matters outside of the complaint. *See Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991); *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991). "If matters outside of the complaint are presented to and not excluded by the court, then the court should treat the motion as one for summary judgment under Rule 56 and not as a motion to dismiss." *Id.* The district court must provide the parties with notice prior to converting a Rule 12(b)(6) motion to dismiss to a motion for summary judgment. *See Blue Circle Cement, Inc. v. Bd. of County Comm'rs*, 27 F.3d 1499, 1503 (10th Cir. 1994).

## DISCUSSION

I.     Motion to Remand

Plaintiffs timely move to remand on the procedural ground that the Notice of Removal is defective because Defendants failed to consent unanimously to removal and on the jurisdictional ground that the Court does not have diversity of citizenship subject matter jurisdiction over the case because Defendants have failed to establish that the amount in controversy exceeds the jurisdictional threshold or that complete diversity exists.   Plaintiffs also argue that they are entitled to attorney's fees.   The Court will address each of these arguments in turn.

A.     Procedural Defect

Plaintiffs contend that the Court should remand this case on procedural grounds because Defendant Martin did not independently consent in writing to the removal.   Defendants counter by arguing (1) that Defendant Martin did not need to consent because Plaintiffs failed to serve Defendant Martin prior to the filing of the Notice of Removal, and (2) that even though his consent was not required, Mr. Martin nonetheless consented to the removal through his attorney.

1.     Service

With respect to Defendants' first argument, Plaintiffs acknowledge that when a plaintiff sues multiple defendants, all defendants *served* at the time of filing must join the notice of removal.   *See Sheldon v. Khanal*, 10-3237, 2012 WL 4801297, at *3 (10th Cir. Oct. 10, 2012) ("only served defendants [must] consent to removal"); *Moreno v. Taos County Bd. of Comm'rs*, 778 F. Supp. 2d 1139, 1142 (D.N.M. 2011) (although co-defendant did not file his consent to removal, "if he was not properly served, his consent was not necessary"); *Cohen v. Hoard*, 696 F. Supp. 564, 566 (D. Kan. 1988) (an exception to the unanimity requirement includes "defendants who have not yet been served with process"); *see also supra* p. 7.   Although Plaintiffs do not

12

contest that it is unnecessary to secure the consent of a co-defendant who was not properly served, they nonetheless seek remand due to lack of consent, arguing that they in fact properly served Defendant Martin.

Plaintiffs were required to serve Defendant Martin pursuant to New Mexico law. *Cf.* N.M. Rules Ann. 1-004(M) ("[w]henever the jurisdiction of the court over the defendant is not dependent upon service of the process within the State of New Mexico, service may be made outside the State as provided by [New Mexico Rule 1-004]"); *see also id.*, 1-004(F) (setting forth the procedure for service of process). In *Edmonds v. Martinez*, the New Mexico Court of Appeals made clear that the New Mexico rules lay out a hierarchy of methods for service of process on an individual. *See* 215 P.3d 62, 66 (N.M. Ct. App.), *cert. denied*, 215 P.3d 42 (2009). First, Rule 1-004(F)(1) requires service to be attempted on the individual personally. *See* N.M. Rules Ann. 1-004(F)(1). Next, Rule 1-004(F)(2) requires service to be attempted on "some person residing at the usual place of abode of the defendant" *and* for service to be sent by first class mail to "the defendant's last known mailing address." *Id.* 1-004(F)(2). Only then may Rule 1-004(F)(3) be invoked, which permits a copy of the process to be delivered to the defendant's "actual place of business or employment . . . to the person apparently in charge" *and* for service to be mailed to the defendant at the defendant's last known mailing address and at the defendant's actual place of business or employment. *Id.* 1-004(F)(3).

Plaintiffs' process server did not attempt personally to serve Defendant Martin or to serve some person at Defendant Martin's usual place of abode. *Id.* 1-004(F)(1) & (2). Under *Edmonds*, only if a plaintiff attempts service personally or at the defendant's residence may the plaintiff serve the defendant at his or her actual place of business. *See id.* 1-004(F)(3). Plaintiffs failed to comply with the prescribed hierarchy in the New Mexico Rules. Thus, the service of

process on Defendant Martin was not sufficient under any of New Mexico's service options.   *Cf.*
*id.* 1-004(F)(1)-(3).

Instead of complying with Rule 1-004(F), the process server delivered process to "Carolyn
Beech, assistant to Kathy Rees, who is this defendant's registered agent and is authorized to accept
service for State Farm Insurance Company," at State Farm's office in Greeley, Colorado.   *See*
Notice of Removal, Exh. A, Aff. of Service.   In their Opposition to the Motion to Remand,
Defendants indicate that Kathy Rees is not the registered or other authorized agent of Defendant
Martin but rather is the registered agent for Defendant State Farm.   Plaintiffs present no evidence
to the contrary.   Moreover, the affidavit of service itself does not provide that Ms. Rees was
authorized to accept service for Defendant Martin but rather indicates that Kathy Rees was
"authorized to accept service for State Farm."   *Id.*

It is unclear whether the State Farm address in Greeley, Colorado at which Ms. Rees was
served is the same address at which Defendant Martin works or whether Ms. Rees constitutes a
"person apparently in charge," such that Plaintiffs could argue that they served Mr. Martin at his
"actual place of business or employment" pursuant to Rule 1-004(F)(3).   *Cf.* N.M. Rules Ann.
1-004(F)(3).   Even if the addresses were the same, however, there is no evidence that Plaintiffs
also mailed a copy of the summons and complaint to Defendant Martin's "last known mailing
address and [to] the defendant's actual place of business or employment."   *Id.*   Moreover, as
discussed herein, Plaintiffs failed to comply with the prescribed hierarchy of service by attempting
first to serve Defendant Martin in person and then at his residence.   *Cf. id.* 1-004(F)(1)-(3).

For the foregoing reasons, the Court concludes that Defendant Martin was not properly
served prior to the filing of the removal petition.   Thus, Defendant Martin's consent to remand
was not required.   *Cf. Moreno*, 778 F. Supp. 2d at 1142 (holding that the consent of a

co-defendant to the removal petition was not necessary because the service of process did not comply with the hierarchy set forth in New Mexico Rule 1-004).   The Court therefore denies Plaintiffs' Motion to Remand to the extent it is based upon Defendant Martin's failure to consent to the removal petition.

        2.    <u>Consent</u>

Defendants argue that the Court also should deny the Motion to Remand with respect to Plaintiffs' procedural challenge on a second, independent ground, because even though Defendant Martin's consent was not required, Defendant Martin nonetheless agreed in writing to the removal through his attorney.   Defendants claim that Mr. Martin's counsel, who also represents co-Defendants, provided effective consent by indicating in the Notice of Removal that Mr. Martin "consents to the removal of this Complaint."   *See* Notice of Removal, ¶ 12.   Defendants further maintain that Defendant Martin supported the Notice of Removal by providing his signed affidavit for attachment to the removal petition.   *See id.*, Exh. B, Aff. of C. Martin.

To comply with the unanimity rule, it is not necessary for a co-defendant to sign the actual petition for removal.   *See Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 76 (1st Cir. 2009); *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1262, n.11 (5th Cir. 1988); *Henderson v. Homes*, 920 F. Supp. 1184, 1186 (D. Kan. 1996); 16 J. Moore, *Federal Practice* § 107.11[1][d], at 247-48 (3d ed. 2009) (citations omitted).   Rather, it is only necessary for the co-defendant unambiguously to provide some notice of his or her consent before the thirty-day removal period expires. *See id.*   A split of authority exists as to whether the notice of consent must be in writing. *See, e.g., Spillers v. Tillman*, 959 F. Supp. 364, 369 (S.D. Miss. 1997) (recognizing the a split of authority) (citations omitted); *Esposito*, 590 F.3d at 76 (acknowledging disagreement among courts).   The majority view, however, appears to be that written consent is required.   *See, e.g., id.*

15

(noting that most courts "typically require some type of writing that evinces consent"); *see also Getty Oil Corp.,* 841 F.2d at 1262, n.11 ("there must be some timely filed written indication from each served defendant . . . that it has actually consented to such action"); *Landman v. Borough of Bristol,* 896 F. Supp. 46, 409 (E.D. Pa. 1995) (citing cases in support of requirement must file independent writing).

The United States District Court for the District of Kansas identified good reasons for the requirement that the consent be in writing:

> Without such a filing, "there would be nothing on the record to 'bind' the allegedly consenting defendant."   It serves the policy of insuring the unanimity necessary for removal.   It is consistent with the notion that filing requirements are strictly construed and enforced in favor of remand.   It is not an onerous requirement that unfairly disadvantages defendants or that can be manipulated by the plaintiff. . . .   District courts within the Third, Fourth, Fifth, Sixth, Seventh, Ninth, Tenth and Eleventh Circuits have endorsed similar requirements.

*Henderson,* 920 F. Supp. at 1187 n.2 (internal citations omitted).

In addition to being written, the notice of consent must be individual and unambiguous. *See, e.g., id.* at 1187 ("[e]ach party must independently and unambiguously file notice of its consent and its intent to join in the removal within the thirty-day period") (citations omitted).   "It is simply not enough that the removing party in its notice of removal represents that the other defendants consent or do not object to removal.   '[O]ne defendant's attempt to speak on behalf of another defendant will not suffice.'"   *Id.; see also McShares, Inc. v. Barry,* 979 F. Supp. 1338, 1342-43 (D. Kan. 1997) (same); *Getty Oil,* 841 F.2d at 1262 n. 11 (the majority view is that the "mere assertion in a removal petition that all defendants consent to removal fails to constitute a sufficient joinder") (citation and internal quotation marks omitted); *Jarvis v. FHP of Utah, Inc.,* 874 F. Supp. 1253, 1254 (D. Utah 1995) ("each party must independently and unambiguously file

16

notice of their consent and intent to join in the removal within the thirty day period allowed"). The written consent of each individual defendant can be signed by the defendant or by the defendant's attorney. *See Getty Oil Corp.*, 841 F.2d at 1262 n.11; *Creekmore v. Food Lion*, 797 F. Supp. 505, 509 (E.D. Va. 1992); *Spillers*, 959 F. Supp. at 369 (citation omitted).

The Court concludes that Defendant Martin individually and unambiguously provided his written consent to the removal petition when his attorney indicated in Defendants State Farm and Sweeney's Notice of Removal that Mr. Martin consented to the removal. Although Plaintiffs correctly note that the mere assertion in a removal petition that all defendants consent to removal is insufficient to demonstrate consent, *cf. Henderson*, 920 F. Supp. at 1187; *Getty Oil*, 841 F.2d at 1262 n.11, Defendant Martin's co-defendants did not simply assert Mr. Martin's consent in the petition. Rather, Defendant Martin's attorney, who represented Mr. Martin as well as his co-defendants, asserted that Defendant Martin consented to the removal. Courts have held that the written consent to removal of a defendant's attorney is valid. *Cf. id.* Although the Tenth Circuit has not directly addressed the question whether a jointly-represented, co-defendant's consent asserted by his shared attorney in a removal petition filed by his co-defendants is sufficient to constitute consent to removal, this Court concludes that the consent is sufficiently unambiguous when combined with the fact that Defendant Martin also signed an affidavit attached to the Notice of Removal.[2] *Cf. Spillers*, 959 F. Supp. at 371 (an affidavit "could be construed as an official filing or voicing of consent as required by the majority view") (internal citation marks and citation omitted). The Court therefore denies Plaintiffs' Motion to Remand to the extent it is based upon

---

[2]   Of course, it would have been prudent for Defendant Martin to file an independent notice of consent rather than risk remand. *Cf. Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 77 (1st Cir. 2009) ("it is undoubtedly the better practice for a defendant who wants to be in federal court to join the removal notice explicitly, either by signing the notice itself or by filing its consent").

Defendant Martin's failure to consent to the removal petition.

     B.     <u>Lack of Subject Matter Jurisdiction</u>

     In addition to challenging removal on procedural grounds, Plaintiffs also contend that the Court should remand this case on jurisdictional grounds because the Court lacks diversity of citizenship jurisdiction over the parties.   Specifically, Plaintiffs argue that Defendants have not established that the amount in controversy exceeds $75,000 or that complete diversity exists.   In response, Defendants maintain that if each Plaintiff were to prevail on his or her claims, the amount in controversy would meet the jurisdictional threshold and that removal was proper because the only non-diverse defendant was fraudulently joined.

     1.     <u>Amount in Controversy</u>

     Section 1332(a) of Title 28 of the United States Code provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, . . . and is between . . . citizens of different States." 28 U.S.C. § 1332(a).   Here, Plaintiffs assert that Defendants failed to establish that the amount in controversy is in excess of $75,000.   In determining whether the requirements of federal diversity jurisdiction have been established, a district court must look to the complaint.   *See Penteco Corp. v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991) (citation omitted).   "Where the pleadings are found wanting, [however], [the] court may also review the record for evidence that diversity does exist."   *Id.* (citation omitted).

     It is well settled that "[t]he burden is on the party requesting removal to set forth, in the notice of removal itself, the '*underlying facts* supporting [the] assertion that the amount in controversy exceeds [$75,000].'"   *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir.) (quoting *Gaus v. Miles, Inc.*, 80 F.2d 564, 567 (9th Cir. 1992)), *cert. denied*, 516 U.S. 863 (1995).   Because

the Complaint does not allege a specific amount of damages above the jurisdictional limit,

Defendants must "prove by at least a preponderance of the evidence that the amount in controversy

exceeds $75,000." *Green v. Harsco Corp.*, No. 99-5139, 2000 WL 745353, at *3 (10th Cir. May

25, 2000) (citations omitted); *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1247

(10th Cir. 2012).   It is the underlying jurisdictional facts, and not the legal conclusion that

jurisdiction exists, that a defendant must prove.   *See McPhail v. Deere & Co.*, 529 F.3d 947, 954

(10th Cir. 2008).   There are several ways a defendant can meet this burden, including "'by

contentions, interrogatories or admissions in state court; by calculation from the complaint's

allegations[;] by reference to the plaintiff's informal estimates or settlement demands[;] or by

introducing evidence, in the form of affidavits from the defendant's employees or experts, about

how much it would cost to satisfy the plaintiff's demands.'"   *Id.*; *see also Frederick*, 683 F.3d at

1247 (noting that the list is not exclusive) (quoting *McPhail*, 529 F.3d at 954).

   Defendants argue that they satisfied their burden of proving by a preponderance of the

evidence that Plaintiffs' claims, if successful, would exceed the $75,000 jurisdictional threshold.

*See* Resp. in Opp. to Mot. to Remand, p. 3 (citing Notice of Removal, ¶¶ 15-16; *id.* Exh. C, Aff. of

D. Bruckner).   Specifically, Defendants point out that all six of the Plaintiffs seek compensatory

and punitive damages as well as attorney's fees for Counts I (alleging bad faith claims handling

and bad faith refusal to pay medical payments coverage benefits) and II (alleging that State Farm

breached its fiduciary duties under the covenant of good faith and fair dealing), that all six of the

Plaintiffs seek attorney's fees and treble damages for Count III (alleging that State Farm engaged

in unfair and deceptive business practices under the Unfair Insurance Practices Act), that all six of

the Plaintiffs seek breach of contract damages for Count IV (alleging invasion of Plaintiffs' right to

privacy), and that all six of the Plaintiffs seek contract damages for Count V (alleging breach of

contract) with limits for medical payments coverage benefits under the respective policies of $100,000 for Plaintiffs Bodenner, Boyce, and Gilman, and $5,000 per person for Plaintiffs Elizabeth, Andrew, and Abel Dominguez.   Defendants further submit the affidavit of attorney Don Bruckner, in which Mr. Bruckner attests that the majority of his law practice during the past nineteen years has been dedicated to personal injury cases, that he has tried in excess of 30 cases before a jury, and that based upon his experience litigating claims such as Plaintiffs' before a jury the "combined award could be in excess of $75,000."   Notice of Removal, Exh. C, Aff. of D. Bruckner, ¶¶ 3, 8.

The Court concludes that Defendants have demonstrated by a preponderance of the evidence that if Plaintiffs were able to establish liability and damages the amount in controversy would exceed the jurisdictional limit of $75,000.   The Court reaches this conclusion after considering the allegations in the Complaint as well as the Affidavit of Mr. Bruckner.   *Cf. McPhail*, 529 F.3d at 954 (court may consider allegations in complaint and affidavits of defendant's experts).   Because Defendants have satisfied their burden by a preponderance of the evidence, the Court denies Plaintiffs' Motion to Remand to the extent it is based on the ground that the jurisdictional amount does not exceed $75,000.

### 2.   Complete Diversity

Plaintiffs further move to remand on the ground that the Court lacks original diversity of citizenship jurisdiction over this case because Defendant Sweeney is a resident of the forum state. Defendants removed this case despite Defendant Sweeney's New Mexico residency on the ground that Plaintiffs, who with the exception of Plaintiff Melanie Boyce are also New Mexico residents, joined Defendant Sweeney fraudulently to defeat federal jurisdiction.   *See* Notice of Removal, ¶¶ 17-19.

20

A defendant may remove a case to federal court if a plaintiff joins a non-diverse defendant fraudulently provided the defendant can demonstrate there is no possibility that the plaintiff would be able to establish a cause of action against the resident defendant.  *See Am. Nat'l Bank & Trust v. Bic Corp.*, 931 F.2d 1411, 1412 (10th Cir. 1991) (citations omitted); *see also supra* p. 9. "[R]emand is required, [however,] if any one of the claims against the non-diverse defendant . . . is possibly viable."  *Montano v. Allstate Indem.*, No. 99-2225, 2000 WL 525592, at *2 (10th Cir. Apr. 14, 2000) (citation omitted); *see supra* pp. 9-10.

Defendants argue that Plaintiffs assert no viable factual claim against Defendant Sweeney under any theory of liability because all of the allegations of misconduct in the Complaint arise from the purported mishandling of Plaintiffs' respective medical payments coverage claims, *see* Notice of Removal, Exh. A, Compl., ¶¶ 11, 16, 17, 18, 80, 84, 85, 100, 103, 104, 111, 114, 115; *see also* Mot. to Remand, ¶ 4 ("[t]his dispute arises from Defendant State Farm's improper handling and processing of claims for medical payments benefits for injuries . . . sustained in . . . automobile accidents"), and the facts do not demonstrate that Defendant Sweeney played any role in the handling of medical payments coverage claims.   The Court agrees.

Upon specific allegations of fraudulent joinder, the Court may "pierce the pleadings, . . . consider the entire record, and determine the basis of joinder by any means available.'"  *See Smoot v. Chicago, Rock Island & Pac. R.R. Co.*, 378 F.2d 879, 882 (10th Cir. 1967)) (citation and internal citations omitted); *supra* pp. 8, 9.   To this end, Defendants have produced evidence indicating that Plaintiffs' medical payments coverage claims were handled by personnel in the Greeley, Colorado claims office and that Defendant Sweeney played no role in the handling of those claims.   Specifically, in her affidavit, Defendant Sweeney attests that she worked in the New Mexico State Farm office, that she was responsible for overseeing only automobile claims

21

handling, and that she did not supervise or participate in the handling of any (including Plaintiffs')
medical payments claims.  *See* Notice of Removal, Exh. D, Aff. of K. Sweeney, ¶¶ 1, 2, 4; *see
supra* pp. 3-4.  In his affidavit, Chase Martin likewise attests that "[a]ll claims for medical
payment coverage involving New Mexico insureds are handled out of the Greenlee [sic], Colorado
claims office" and that this includes the "medical payments coverage claims for each of the named
Plaintiffs in this lawsuit."  *See id.*, Exh. B, Aff. of C. Martin, ¶ 3.

Plaintiffs have not refuted the evidentiary showing produced by Defendants.[3]  Rather,
Plaintiffs only argue in conclusory form that because Defendant Sweeney was State Farm's Auto
Claims Section Manager for the State of New Mexico, she was "responsible for State Farm's
implementation of . . . auto claims handling policies and procedures within the state of New
Mexico, including the proper processing and handling of medical payment coverage claims which
Plaintiffs had purchased as part of their automobile insurance policies."  Mot. to Remand, p. 8;
*see also* Pls' Resp. to Defs' Mot. to Dismiss Sweeney Claims, ¶¶ 9, 10.  This general conclusory
allegation unsupported by any evidence does not refute the specific evidence produced by
Defendants demonstrating that Ms. Sweeney had no involvement, direct or otherwise, in the
processing of Plaintiffs' (or indeed any) medical payments coverage claims.  The Court therefore
concludes that Plaintiffs have failed to state a claim under any of the counts alleged in the

---

[3]   Plaintiffs argue that the Federal Rules of Civil Procedure require only a "short and plain
statement of the grounds for the court's jurisdiction" and a "short and plain statement of the claim
showing that the pleader is entitled to relief," and that there is no "special pleading rule[]" that
requires Plaintiffs to anticipate Defendants' efforts to seek removal to a federal district court.  *See*
Mot. to Remand, ¶ 12.  While Plaintiffs are correct in stating that they were not required to file a
complaint pursuant to any special pleading rules, upon an allegation of fraudulent joinder by a
defendant, a court no longer is bound to the pleadings; rather, the law provides that a court may
"pierce the pleadings[] and determine the basis of joinder by any means available.'"  *See Smoot*,
378 F.2d at 882 (quoting *Dodd*, 329 F.2d at 85).  Thus, once Defendants alleged fraudulent
joinder, Plaintiffs had the option of presenting evidence to refute the evidence presented by
Defendants.  Plaintiffs chose not to do so.

Complaint against Defendant Sweeney.

Plaintiffs' argument that they have a viable cause of action against Defendant Sweeney under the Trade Practices and Frauds Act (TPFA), N.M. Stat. Ann. § 59A-16-1 to 30, does not persuade the Court to find otherwise.   In support of their contention, Plaintiffs cite *Martinez v. Cornejo*, 208 P.3d 443 (N.M. Ct. App.), *cert. denied*, 203 P.3d 870 (N.M. 2009).   In *Martinez*, the New Mexico Court of Appeals held that a managerial employee responsible for supervising claims adjusters allegedly responsible for mishandling the plaintiffs' claims falls within the meaning of the term "insurer" for purposes of the TPFA, and that a private right of action therefore exists against such a manager.   *See* 208 P.3d at 445, 450.   Plaintiffs argue that the Court cannot conclude that Defendant Sweeney was improperly joined when *Martinez* explicitly provides that such a cause of action exists.   Plaintiffs' reasoning is flawed.

*Martinez* does not stand for the proposition that any manager can be held liable for a group of insurance adjusters regardless of whether the manager is responsible for supervising that particular group of adjusters.   Rather, the *Martinez* court determined that where the plaintiffs alleged that the manger was responsible for ensuring that the all New Mexico employee adjusters complied with all TPFA requirements while handling all New Mexico claims, including the plaintiffs' claims, that manager was subject to liability under the TPFA.   *See id.* at 450.   In *Martinez*, the plaintiffs alleged that the manager in question supervised the adjusters responsible for handling the plaintiffs' claims, *see id.* at 445 (deciding "whether a manager of a group of insurance adjusters" can be held personally liable for violations of the TPFA), and the defendant presented no evidence or argument that contradicted the plaintiffs' allegation, *see id.*   In contrast, Defendants in the case at bar have presented uncontroverted evidence that Defendant Sweeney played no role, direct or indirect, in the management or supervision of any of the adjusters

responsible for handling the claims at issue.   As such, the court's decision *Martinez* is distinguishable and does not persuade the Court to conclude that Plaintiffs have stated a cause of action against Defendant Sweeney under the TPFA.

For the foregoing reasons, the Court concludes that Defendants have satisfied their heavy burden of demonstrating that there is no possibility that Plaintiffs would be able to establish a cause of action against Defendant Sweeney.   *Cf. Montano*, 2000 WL 525592, at *1; *see supra* p. 9.   The Court therefore denies Plaintiffs' Motion to Remand on the ground that the Court lacks diversity of citizenship jurisdiction over this case.[4]

3.   Attorney's Fees

A federal court remanding a removed case to state court for lack of subject-matter jurisdiction "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."   28 U.S.C. § 1447(c).   An award of attorney's fees, however, is appropriate only if a court grants the motion for remand.   *See id.* ("an order *remanding the case* may require the payment of . . . attorney fees") (emphasis added).   Because the Court has denied the Motion to Remand, the Court likewise denies Plaintiffs' accompanying request for attorney's fees.

II.   Motion to Dismiss Claims Subject to Arbitration

Defendant State Farm asks the Court to dismiss Plaintiffs' claims and order those claims

---

[4]   The Court declines to consider Defendants' additional argument that Plaintiffs' claims against Defendant Sweeney for breach of contract, insurance bad faith, and breach of insurer's fiduciary duty under the covenant of good faith and fair dealing are not legally viable because these claims stem from the insurance contracts and Defendant Sweeney is not a party to the contracts.   The Court already has determined that Plaintiffs have stated no viable claim against Ms. Sweeney because the evidence shows that she played no role in the handling or supervision of Plaintiffs' medical payments coverage claims.   The Court therefore need not and does not consider Defendants' additional arguments.

resolved via binding arbitration to the extent the claims seek a determination whether specific medical bills incurred by Plaintiffs are compensable under their respective policies as medical expenses.   In response, Plaintiffs do not dispute the validity of the binding arbitration clauses or otherwise argue that the arbitration clauses are unenforceable.   Rather, Plaintiffs contend that they allege multiple causes of action that are not subject to the policies' arbitration clauses (including claims based upon Defendant State Farm's alleged *ex parte* contact with Plaintiffs' physicians and claims based upon State Farm's alleged harassment of Plaintiffs and invasion of Plaintiffs' privacy).   In reply, Defendant specifically indicates that it does not seek dismissal of claims unrelated to the question whether incurred expenses are compensable as medical expenses, but rather only seeks dismissal of those claims that are subject to the arbitration provisions in the policies.

In New Mexico, public policy strongly favors arbitration, particularly when there is an agreement by both parties to arbitrate any controversies.   *See K.L. House Constr. Co. v. City of Albuquerque*, 576 P.2d 752, 753-54 (N.M. 1978) ("the announced policy of this State favors and encourages arbitration as a means of conserving the time and resources of the courts and the contracting parties").   To this end, a court plays "a minimal role in supervising arbitration practice and procedures," making only "the initial determination as to whether the dispute is arbitrable, that is 'whether the parties have agreed to arbitrate this particular dispute.'"   *Id.* (quoting *Nationwide Gen. Ins. Co. v. Investors Ins. Co.*, 332 N.E.2d 333, 335 (1975)).   "Once it appears that there is . . . a reasonable relationship between the subject matter of the dispute and the general subject matter of the underlying contract, the court's inquiry is ended" and its sole task is to order the parties to arbitrate.   *Id.* at 754.

25

The insurance policies all contain identical arbitration clauses.[5]   The plain language of the policies provides that if requested by one of the parties, all disputes concerning "whether incurred charges are medical expenses" under Plaintiffs' respective policies must be decided by binding arbitration.   *See supra* p. 5.   Defendant State Farm has requested that Plaintiffs arbitrate their claims.   *See id.*   Thus, the only remaining question is whether the dispute has a reasonable relationship to the subject matter of the underlying agreement.   *See K.L. House Constr.*, 576 P.2d at 754.

In this case, the subject matter of the dispute clearly has a reasonable relationship to the subject matter of the contract.   The plain language of the arbitration clauses requires the parties to arbitrate any claims regarding whether specific medical bills incurred by Plaintiffs are compensable under their respective policies as "medical expenses," and the Complaint clearly alleges claims that fall within the scope of this arbitration provision.   Plaintiffs do not dispute the validity or scope of the arbitration clauses.   Thus, to the extent Plaintiffs' claims seek a determination whether specific bills are compensable as medical expenses, the Court concludes that those claims fall within the scope of the arbitration provisions.   Having decided this threshold question, the Court's only job is to order the parties to arbitrate the covered claims.   Accordingly, the Court grants Defendant State Farm's Motion to Dismiss Claims Subject to Arbitration and orders the parties to arbitrate those claims.   To the extent Plaintiffs' claims are unrelated to the question whether Plaintiffs' bills are compensable as medical expenses, those claims remain

---

[5]   Defendant State Farm attaches excerpts from the insurance policies, including the arbitration provisions, to their Motion to Dismiss Claims Subject to Arbitration.   Although a district court normally may not consider matters outside of the complaint when ruling upon a motion to dismiss, an exception exists where, as here, the outside documents are referred to in the complaint and are central to the plaintiff's claims.   *See GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997) (citations omitted); *see infra* note 6.

pending in this case.

III.    Motion to Dismiss Sweeney Claims

      Defendants move to dismiss the claims against Defendant Sweeney on the ground that Plaintiffs fraudulently joined Ms. Sweeney to destroy complete diversity and defeat federal subject matter jurisdiction.   Defendants contend that Plaintiffs' complaint does not state a factual or legal claim against Defendant Sweeney and that the Court therefore should dismiss Defendant Sweeney from this case.

      Normally, when considering a motion to dismiss, the Court must disregard facts supported by documents other than the complaint unless the Court first converts the motion to dismiss into a motion for summary judgment.   *See Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991).   Thus, although the Court pierced the pleadings and considered the affidavits of Defendants Sweeney and Martin for the purpose of ruling on the Motion to Remand, *cf. Smoot v. Chicago, Rock Island & Pac. R.R. Co.*, 378 F.2d 879, 882 (10th Cir. 1967), the Court cannot consider the Sweeney and Martin affidavits for purposes of ruling on the Motion to Dismiss the Sweeney Claims without first converting the motion to a motion for summary judgment.[6]   "Rule 12(b) authorizes a court to treat a motion to dismiss as one for summary judgment, provided that the court affords the parties a 'reasonable opportunity to present all material made pertinent to such a motion by Rule 56.'"   *Blue Circle Cement, Inc. v. Bd. of County Comm'rs*, 27 F.3d 1499, 1503

---

[6]   There are three instances in which a court may consider documents outside of the complaint in ruling on a motion to dismiss:   (1) when the motion to dismiss is pursuant to Federal Rule of Civil Procedure 12(b)(1), *see Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000); (2) when the outside documents are subject to judicial notice, *see Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006), *cert. denied*, 549 U.S. 1209 (2007); and (3) when the outside documents are central to the plaintiffs' claims and referred to in the complaint, *see GFF Corp.*, 130 F.3d at 1384 (citations omitted).   None of these exceptions applies here.

(10th Cir. 1994) (quoting Fed. R. Civ. P. 12(b)); *see also Bizilj v. St. John's Military School,* No. 08-CV-2036, 2008 WL 4394713, at *1 (D. Kan. Sept. 24, 2008) (same).   The Tenth Circuit has indicated that "a [district] court's failure to comply with the notice requirements when changing a Rule 12(b) motion to one for summary judgment may constitute reversible error." *Blue Circle,* 27 F.3d at 1503 (citations omitted).

The Court hereby provides the parties with notice that it intends to treat Defendants' Motion to Dismiss the Sweeney Claims as a motion for summary judgment and to consider the Sweeney and Martin affidavits.   If Plaintiffs would like to present any additional argument or evidence in opposition to the Motion to Dismiss the Sweeney Claims, Plaintiffs must do so within fourteen (14) days from the date of this Memorandum Opinion and Order.   If Plaintiffs present additional briefing or evidence, Defendants will have ten (10) days from the date of Plaintiffs' filing to present argument or evidence in reply.

## CONCLUSION

For the foregoing reasons, IT THEREFORE IS ORDERED that Plaintiffs' Motion to Remand, Request for Attorney Fees, and Authorities [Doc. 10] is hereby denied, and that Defendant State Farm's Motion to Dismiss for Failure to State a Claim Regarding Payment of Medical Expenses and Consolidated Memorandum Brief in Support to Motion to Dismiss for Failure to State a Claim [Doc. 5] is hereby granted.

In addition, the Court notifies the parties that the Court intends to treat Defendants State Farm and Kris Sweeney's Motion to Dismiss all Claims Against Kris Sweeney ("Motion to Dismiss Sweeney Claims") [Doc. 3], as a motion for summary judgment.   Accordingly, IT FURTHER IS ORDERED as follows:

28

(1)   Plaintiffs shall have fourteen (14) days from the date of this Memorandum Opinion

and Order to present additional argument or evidence in a supplemental response to

the Motion to Dismiss Sweeney Claims; and

(2)   If Plaintiffs present additional briefing or evidence, Defendants shall have ten (10)

days from the date of Plaintiffs' supplemental response to present argument or

evidence in a supplemental reply.


Dated this 30th day of November, 2012.


_____
MARTHA VÁZQUEZ,
UNITED STATES DISTRICT JUDGE